IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-02315-PAB-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

 Plaintiff,

v.

THE PICTURE PEOPLE, INC.,

 Defendant.

_____

**ORDER GRANTING SUMMARY JUDGMENT**
_____

  This matter is before the Court on defendant's motion for summary judgment [Docket No. 31], plaintiff's motion for partial summary judgment [Docket No. 29] and defendant's motion to withdraw affirmative defenses [Docket No. 36]. Because defendant's motion to withdraw seeks to withdraw the affirmative defenses on which plaintiff sought summary judgment, the Court will grant defendant's motion to withdraw, thereby mooting plaintiff's partial summary judgment motion. Defendant's summary judgment motion, however, must still be resolved. The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**[1]

  Defendant is a national chain of portrait studios, specializing in portraits of children five years old and younger. The charging party, Jessica Chrysler, is a profoundly deaf young woman, who the parties agree is disabled within the meaning of

---

[1] Unless otherwise indicated, the following facts are not in dispute.

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.  The parties dispute the degree to which Chrysler can read lips and speak; however, it is clear that Chrysler has at least a limited spoken vocabulary and that her preferred mode of communication is American Sign Language ("ASL").  When Chrysler cannot use ASL with an individual, she prefers to communicate using a mixture of written notes and gestures.

On October 27, 2007, Arnold Aguilar, the studio manager at Picture People's Littleton, Colorado location, hired Chrysler.  Aguilar knew that Chrysler was deaf and, during their interview, communicated with her primarily in writing.  He told her that he had previously worked with a deaf employee at Picture People, referring to Wendy Duke who worked for defendant in Texas.  Aguilar hired Chrysler as a "performer," a position at Picture People which involves a number of different tasks (also sometimes referred to as an "associate").  The parties dispute whether Aguilar hired Chrysler as a seasonal employee or if she was hired as a core employee who would maintain her hours after the holiday rush.  Although the parties dispute what the core functions of a performer are, the position at least involves photography, sales, lab work, and front desk duties, and includes interacting with customers.  During peak times, performers are "zoned" to different areas of the store - such as the lab or the camera room (these "zones" are also referred to as "Customer Contact Points" in defendant's materials).  Defendant sometimes uses what it calls "2-2 staffing" during non-peak times, which involves one performer and one manager during a shift.  The performer must be able to perform all the essential functions of the job during these 2-2 staffing periods.  When

Mr. Aguilar first hired Chrysler, he intended to zone her to the camera room as a photographer.

The day after Chrysler was hired she requested an ASL interpreter for her training. Aguilar asked District Manager Candi Bryan about an interpreter and was told that defendant did not offer those services. Aguilar then emailed Human Resources Director Jeff Rawlings, who told Aguilar to ask Chrysler about how to arrange for interpreters. Ultimately, Chrysler supplied an interpreter for her first training session from the Colorado Division of Vocational Rehabilitation ("DVR"). Chrysler trained with Aguilar and a DVR interpreter on November 12, 15, and 16, 2008. Following her training, defendant gave Chrysler the opportunity to perform photography, lab, and sales functions. Plaintiff disputes that Chrysler was given the opportunity to perform the front desk or administrative functions and claims she performed these duties on her own initiative. On November 17, 2007, customers Matt and Melissa Krol had a positive photo session with Chrysler, who photographed their infant, and ended up purchasing more pictures than they intended.

During this period, District Manager Bryan and Master Photographer Libby Johnston visited the Littleton studio. The extent of Bryan and Johnston's interactions with Chrysler and observation of her work is disputed; however, it is undisputed that on November 20, 2007 Bryan and Johnston recommended zoning plaintiff to the lab instead of the camera room. On November 21, 2007, Aguilar demoted himself from manager to performer. Afterwards, Chrysler was assigned almost exclusively to the lab. Sometime after November 20, 2007, Chrysler asked Kim Doyle, acting studio manager after Aguilar's demotion, for an interpreter for an upcoming staff meeting. An interpreter

was not provided; instead, management gave Chrysler an outline of the meeting, but Chrysler still could not understand the discussion among employees at the meeting. One of plaintiff's co-workers recalls Doyle and assistant manager Deidre Sandoval picking on Chrysler and making her cry, although Chrysler did not offer these incidents when asked about harassment in her deposition. At one point, Aguilar reported to plaintiff in writing that assistant manager Sandoval told a group of employees "to write down orders because [Chrysler] can't fucking hear." Docket No. 43-15.

After the 2007 Christmas season, management instructed Doyle to cut hours and terminate the seasonal performers at the Littleton studio. In December 2007, Chrysler saw she was not on the schedule for the following week and complained about it to Doyle. Doyle explained to Chrysler in a written conversation that the reduction in performer's hours was normal following the holiday season and that it affected everyone. Doyle also stated that she "would love to have [Chrysler] full time," but did not have the business to do so. Docket No. 34-7. Doyle felt that Chrysler was calling constantly and threatening discrimination, so she emailed Bryan about the situation. Doyle told Bryan that plaintiff was "causing trouble" by arguing with managers, refusing to take a break, and coloring with colored pencils at work. Docket No. 34-8. As a result of this email, Bryan and Human Resources Manager Diane Kiattinat gave Chrysler a final written warning detailing these infractions. Bryan and Sandoval also scheduled a disciplinary meeting with Chrysler, for which Chrysler requested an interpreter. An interpreter was not provided for the meeting, and Bryan and Sandoval refused to write down their discussion among themselves, making Chrysler confused about what was happening in the meeting.

4

Chrysler was never given hours at the Littleton studio after December 24, 2007. Chrysler called the studio repeatedly to see if she was on the schedule and spoke to the new manager about getting hours. On May 6, 2008, Chrysler filed a charge of disability discrimination. On May 10, 2008, Bryan wrote Chrysler stating that she thought Chrysler was no longer interested in working at the studio, but that in any case the studio did not have sufficient business to give her hours at the present time. But Bryan advised Chrysler that defendant would be in touch in the busier period before Father's Day, if not before, to arrange placing Chrysler on the schedule.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a

court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  ANALYSIS

### A.  Failure to Accommodate

Plaintiff's first claim is for failure to accommodate pursuant to 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A), provisions of the ADA which prohibit discrimination against qualified individuals on the basis of disability and failing to make reasonable accommodations to a qualified individual's known disabilities.  In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability." *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (quotations omitted). "Discrimination" under the ADA can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual" and thus "a separate claim of discrimination can be stated under the ADA for failing to provide a reasonable accommodation." *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A)).

Defendant does not contest that Chrysler is disabled under the ADA.  Rather, defendant argues that plaintiff cannot meet the second element of its prima facie case because Chrysler is not qualified, with or without accommodation, to perform the essential functions of the performer position because she cannot communicate verbally.

Plaintiff responds that Chrysler is able to perform all the essential functions of the job by using written communication, gestures, and limited spoken speech.

In order to determine whether Chrysler can perform the essential functions of the performer position, the Court must first assess what those essential functions are. "Essential functions" are defined as "fundamental" job functions, not "marginal functions of the position." *Id.* at 1191 (quoting 29 C.F.R. § 1630.2(n)(1)). The inquiry into whether a job function is essential "initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement." *Id.* (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)). "If the employer does require performance of [the function], 'the inquiry will then center around whether removing the function would fundamentally alter the position.'" *Id.* (quoting *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995)). In deciding whether a function is essential, courts "must give consideration to the employer's judgment," but such evidence is not conclusive. *Id.* "[A]n employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Id.* (quoting *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (9th Cir. 2000)). Nonetheless, "[p]rovided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Id.*

Defendant contends that "strong verbal communication skills" is an essential function of the performer position. Defendant points to job descriptions published in

October 2007, before Chrysler was hired, for the positions of seasonal associate and performer, both of which list "strong verbal communication skills" as a "job qualification." *See* Docket No. 31-4. Plaintiff responds that defendant does not know when this job description was created; however, plaintiff points to defendant's discovery responses which state that although defendant "does not know the exact date this job description was created," the job descriptions were "prepared prior to the arrival of Diane Kiattinat as HR Manager in August of 2007," therefore at least predating plaintiff's hiring. *See* Docket No. 43-20 at 21; *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1262 (10th Cir. 2009) (the relevant period for the essential function inquiry is when the function was imposed on the plaintiff). Next, plaintiff argues that strong verbal communication skills is a qualification standard, not an essential function of the performer position. Although plaintiff is correct that every requirement listed in a job description is not automatically an essential function, the Court "will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004). Thus, in order to create a genuine issue of fact as to whether verbal communication is an essential function of the performer job, plaintiff must present sufficient evidence that this requirement is not job-related, uniformly enforced, or consistent with business necessity. *See id.*

Plaintiff presents no evidence that this requirement is not job-related or consistent with business necessity. Defendant, on the other hand, presents ample evidence that being able to speak with customers throughout their experience at defendant's studios is related to defendant's business necessity of facilitating positive

and efficient customer interactions.  *See* Docket No. 31-1 (McGrail Depo.) at 4 (defendant trains performers to constantly talk to customers); *id.* at 5 (important to talk to children during photography sessions and finish sessions quickly); Docket No. 31-2 (Bryan Depo.) at 10 (checking in customers in writing would not provide the appropriate customer experience for defendant); Docket No. 31-10 (defendant's training materials) (emphasizing verbal communication as "an essential part of business"); Docket No. 33-1 (Johnston Depo.) at 4 (hard to ask questions to toddlers in writing, hard to ask customers open-ended questions without speaking); *Id.* at 6 (important to get photo sessions done quickly while young children are cooperating).  Plaintiff does not argue that defendant's desire for strong verbal communication skills in its performers is not reasonably related to its desire to facilitate welcoming and satisfying interactions with its customers and, in particular, to allow its customers to move efficiently through its studios.

However, plaintiff does present some evidence that the verbal communication skills requirement is not uniformly enforced.  Plaintiff points to defendant's employment of Wendy Duke as a performer in one of its Texas studios.  Duke is also profoundly deaf and plaintiff argues that she also used non-verbal methods of communication with customers, such as gestures and note-writing.  It is undisputed, however, that Duke possessed the ability to communicate verbally when she worked for defendant, as she was able to read lips and speak with her own voice.[2]  *See* Docket No. 33-2 (Wendy

---

[2] It is also undisputed that Duke did not have to answer the telephone. *See* Docket No. 31-11 (Wynn Alexander Depo) at 2.  Although this is evidence that answering the phone was not itself an essential job function, it is also undisputed that performers verbally engaged with customers in the studio in many other ways besides

(Duke) Ray Depo.) at 5.  Although Duke testified at her deposition that she sometimes had to have customers write things down when she could not read their lips, her deposition reflects that she was able to primarily use verbal communication at her job. *See id.*  Therefore, plaintiff's evidence does not create a genuine issue of material fact as to whether the requirement of strong verbal communication skills was uniformly enforced.

Plaintiff argues that, notwithstanding defendant's evidence that requiring verbal communication is job-related, uniformly enforced, and arises from a business necessity, the assumption that only verbal communication can be effective is precisely the sort of stereotype the ADA was designed to combat.  However, defendant has pointed to speed as a concrete benefit of verbal communication that is unrelated to the feelings of unfamiliarity or discomfort a customer might experience when interacting with a deaf person.  Plaintiff's own expert admits that verbal communication is preferable because it is faster.  *See* Docket No. 31-6 at 31.  Defendant's witnesses testified to the importance of speed in their business and the ADA does not require defendant to lower company standards.  *See Davidson*, 337 F.3d at 1191.  Therefore, the Court finds that plaintiff has not met its burden to create a genuine issue of material fact as to whether strong verbal communication skills are an essential function of the performer position.

Having found that strong verbal communication is an essential function of the job, the Court now turns to whether Chrysler can perform this function with or without accommodation.  *See Mason*, 357 F.3d at 1121.  It is undisputed that Chrysler has an

---

speaking to customers on the telephone.

extremely limited ability to vocalize words and a limited ability to read lips. *See* Docket No. 43-33 (Newman Depo.) at 2-3 (describing plaintiff's ability to speak as "very limited" and that she has "extremely limited verbal communication"); Docket No. 33-7 (Chrysler Depo.) at 2 (stating that "[o]nce in a while" she can read someone's lips "but not often"). Therefore, she is unable to perform this function without accommodation.[3]

Plaintiff argues Chrysler can perform this essential function with an accommodation because she can use written communication, gestures, and other non-verbal modes of communication.[4] Essentially, this accommodation would amount to a modification of the essential job function, substituting non-verbal communication for verbal communication. But, "the ADA does not [] require an employer to modify an essential function of an existing position in order to accommodate a disabled employee." *Mason*, 357 F.3d at 1123 (citing *Martin v. Kansas*, 190 F.3d 1120, 1133 (10th Cir. 2001) overruled on other grounds, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 373-74 (2001)). The reasonable accommodation requested by plaintiff would require alteration of one of its essential functions. Therefore, the Court

---

[3] Plaintiff's evidence that Chrysler is able to communicate effectively without using verbal speech is irrelevant to the Court's analysis of whether she can perform the essential job function of verbal speech and does not create a genuine question of material fact on this issue.

[4] Plaintiff's expert, Michael Newman, opines that Chrysler would be able to perform the essential functions of the performer position, but adds that he has not evaluated Chrysler's receptiveness to assistive technology, which might allow Chrysler to communicate verbally. *See* Docket No. 43-33 at 11-12. It is not clear whether plaintiff is arguing Chrysler could perform the position with the help of such an assistive device. In any case, plaintiff does not present sufficient evidence that such a device would be effective in her case so as to create a genuine issue of fact as to this potential accommodation.

concludes that Chrysler is not qualified for the position under the ADA and cannot establish her prima facie case of failure to accommodate. *See Davidson*, 337 F.3d at 1188.

### B. Hostile Work Environment

Plaintiff also presents a claim for hostile work environment. In order to prevail on this claim, plaintiff must establish that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004). Plaintiff must also show that Chrysler was targeted for harassment because of her disability. *See Simmons v. Potter*, Civil Action No. 08-cv-02593-WYD-KLM, 2010 WL 3002038 at *13 (D. Colo. July 29, 2010) (applying hostile work environment in context of a disability claim). Factors that may be considered in assessing this claim "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22-23 (1993)). In addition, the hostility of a work environment is considered from the perspective of an objective, reasonable person. *Id.*

Plaintiff points to the following as evidence of hostile work environment: (1) failure to provide an ASL interpreter for her initial training, causing her start date to be pushed back; (2) receiving a note from Aguilar writing down Diedre Sandoval's comment that orders would have to be written down for Chrysler because "she can't

fucking hear"; (3) assigning Chrysler to work full-time in the lab; (4) cutting her hours; (5) failing to provide interpreters at later meetings; and (6) disciplining her for conduct for which other employees were not disciplined.  See Docket No. 43-26 at 22-25. Plaintiff also cites an affidavit from a co-worker stating that Chrysler cried on at least two occasions after being picked on by managers and that these managers treated Chrysler worse than other employees.  See Docket No. 43-12 at 3.

      Plaintiff's alleged hostile work environment claim closely tracks a claim recently examined by the Tenth Circuit in *Thomas v. Avis Rent a Car*, 2011 WL 204459 (10th Cir. Jan. 24, 2011).  There, a deaf plaintiff alleged that his managers "disparaged his abilities based on his deafness, tried to alter his conditions of employment by directing him to work [in the company's maintenance department]" and talked among themselves during a termination meeting without providing plaintiff an interpreter.  *Id.* at *9.  The court reasoned that these conditions did not amount to a hostile work environment because they did "not rise to the requisite level or type of severe and pervasive physically threatening or humiliating conduct sufficient for a claim" of hostile work environment.  *Id.* at *10.  Nor do the conditions alleged here.  As for the claim that Chrysler was harassed, plaintiff presents one stray offensive comment about her deafness and the statement from another co-worker that Chrysler was "picked on" by management.[5]  No rational jury could find that this evidence amounts to the "steady barrage of opprobrious [] comments" required to prove a hostile work environment

---

    [5] The affidavit stating that Chrysler was "picked on" does not state that she was picked on or treated poorly because of her disability, as required for plaintiff's hostile work environment claim, nor does it provide any concrete examples of poor treatment.

claim. *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). Nor can plaintiff show that defendant's failure to provide interpreters "unreasonably interfered with [Chrysler's] work performance or otherwise changed the condition of [her] employment," as plaintiff does not claim that, had defendant provided her interpreters, it would have materially affected her ability to perform her duties. *See Thomas*, 2011 WL 204459 at *10. Finally, that defendant disciplined Chrysler for actions other employees took, reduced her hours, and assigned her to the lab could be evidence of a discrimination claim were Chrysler qualified for the position; however, these facts are insufficient to show a work environment "permeated with discriminatory intimidation, ridicule and insult" as required to create a genuine issue of fact on this claim. *See Sandoval*, 388 F.3d at 1326-27. Therefore, defendant is entitled to summary judgment on plaintiff's hostile work environment claim.

### C. Unlawful Termination

Because the Court finds that plaintiff has not created a genuine issue of material fact as to whether Chrysler was qualified for the position at issue, the Court finds that defendant is also entitled to summary judgment on plaintiff's unlawful termination claim. *See White v. York Intern. Corp.*, 45 F.3d 357, 360-361 (10th Cir. 1995) (recovery under ADA for wrongful termination requires proof that plaintiff is qualified).

### D. Retaliation

Plaintiff finally claims that defendant retaliated against Chrysler for the protected activity of requesting ASL interpreters by disciplining her and not putting her on the work schedule after December 24, 2007. In order to establish a prima facie case of

retaliation, plaintiff must show that (1) she engaged in protected activity; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action. *See Hennagir*, 587 F.3d at 1265. "If a plaintiff establishes a prima facie case, the defendant 'has the burden of coming forth with a legitimate, nondiscriminatory reason for adverse action." *Id.* (quoting *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 752 (10th Cir. 1999)). If defendant meets this burden, the burden shifts back to plaintiff to show that this justification is mere pretext for discrimination. *Id.*

Defendant argues that plaintiff cannot establish its prima facie case because it cannot show that Chrysler actually suffered a materially adverse employment action. A materially adverse employment action is one which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). However, even assuming that disciplining Chrysler and eliminating her from the work schedule were materially adverse actions, defendant also offers legitimate nondiscriminatory reasons for these actions which plaintiff cannot show are pretextual. As for eliminating Chrysler from the work schedule, defendant states that this was necessary because of the reduced business following the holiday rush and Chrysler's inability to perform all the tasks necessary for performers on "2-2 staffing." It is uncontradicted that defendant moves from zoning to "2-2 staffing" during the "slow season," *see* Docket No. 33-5 at 8; Docket No. 33-2 at 3, and that during non-peak times performers are required to perform all of the essential

functions of the performer position.  *See* Docket No. 33-6 at 8 (explaining that during non-peak periods, "it is critical to maximize the availability of skilled associates who are cross-trained in each Customer Contact Point").  Plaintiff has failed to create a genuine issue of material fact as to whether Chrysler can perform the essential job function of verbal communication; therefore, plaintiff also cannot show that defendant's reduction of her hours for the non-peak season was due to discrimination and not a result of her functional limitations.

Defendant also provides a legitimate, nondiscriminatory reason for disciplining Chrysler, namely, that she committed the infractions for which she was disciplined.  Chrysler does not deny that she colored while on the job or refused to take her break when instructed to, but points to the fact that other employees also committed these infractions and were not similarly sanctioned.  *See* Docket No. 43-26 at 27, 29.  Although evidence that similarly situated employees not in the protected class were not subject to discipline for the same actions can be evidence of pretext, plaintiff has provided no details about the other employees and their infractions that would allow a jury to conclude these employees were similarly situated to Chrysler.  *See Trujillo v. Huerfano County Bd. Of County Comm'rs*, 349 F. App'x 355, 365 (10th Cir. 2009).  Therefore, as plaintiff has not created a genuine issue of material fact as to pretext, defendant is entitled to summary judgment on plaintiff's retaliation claim.

**IV. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that defendant's Unopposed Motion to Withdraw Defenses Challenged in the EEOC's Motion for Partial Summary Judgment [Docket No. 36] is **GRANTED**. It is further

**ORDERED** that plaintiff's Combined Motion and Brief in Support of Partial Summary Judgment [Docket No. 29] is **DENIED** as moot. It is further

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 31] is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiff.

DATED May 9, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge